**SETTLEMENT AGREEMENT**
**PARTIES AND EFFECTIVE DATE**

This settlement agreement ("Agreement") is effective as of the date the Federal District Court approves it ("Effective Date"), and is entered into between those persons and/or entities ("person") that control commercial shellfish activities on the covered and non-covered tidelands listed on Exhibit A ("Tideland Parties"), the State of Washington ("State"), and the undersigned Tribes, including: the Squaxin Island Tribe, Jamestown S'Klallam Tribe, Lower Elwha S'Klallam Tribe, Port Gamble S'Klallam Tribe, the Suquamish Tribe,  the Skokomish Tribe, the Lummi Nation, the Nooksack, Nisqually Indian Tribe, the Puyallup Tribe, the Sauk Suiattle, Stillaguamish, Swinomish Indian Tribal Community, the Tulalip Tribes, and the Upper Skagit ("the Treaty Tribes").[1]  The Tideland Parties and the Tribes are collectively referred to herein as "the Parties" and are individually referred herein to as a "Party."  Covenants contained herein apply to the State only where the State is expressly identified.

1.  **RECITALS**

In 2008, claims were submitted for intervention in *United States v. Washington* Subproceeding 89-3-06 that sought covered tidelands status for specific parcels; and

In 2009, the Treaty Tribes submitted a request for dispute resolution that, among other things, objected to covered tidelands status for many of these parcels (Dkt. No. 1) (the "Dispute Resolution Proceeding"); and

Years of litigation and negotiations followed during which, among other things:  the Treaty Tribes did not actively contest coverage of certain tidelands; intervenors withdrew requests for coverage for certain parcels; the Court issued several determinative rulings that interpreted the 2007 Settlement Agreement previously entered as a consent decree in *United States v. Washington*, Subproceeding 89-3, Dkt. No. 18839 (the "2007 Settlement Agreement"); and the Squaxin Island Tribe, Puget Sound Shellfish Growers Legal Defense Fund, and Arcadia Shellfish LLC entered into a settlement agreement that resolved disputes over specific tideland parcels within the Squaxin Island Tribe's U&A (Dkt. No. 347, 348 and 350); and

By this Agreement, the Parties desire to avoid further litigation with regard to all parcels listed in Exhibit A (covered and non-covered), and to establish an orderly process that facilitates the Treaty Tribes' exercise of their Treaty shellfishing rights.

2.  **DEFINITIONS**

"Artificially enhanced" or "artificial shellfish enhancement" or "artificial enhancement" means the creation of new artificial beds or enhancement of existing natural beds.

"Covered tidelands" means parcels that are covered by the 2007 Settlement Agreement.

---

[1] The United States, Makah and Muckleshoot, signatories to the 2007 Agreement, express no objection to the settlement agreement or entry of an order approving the settlement agreement.

 "Non-covered tidelands" means parcels where claims for intervention were submitted for coverage but that are not covered by the 2007 Settlement Agreement.

3.   <u>**NON-COVERED TIDELANDS**</u>

The following process shall govern non-covered tidelands listed in Exhibit A.

**3.1     Presence of Natural Shellfish Beds and Determining Harvest Shares**

   3.1.1    Within fifteen days of the Effective Date, the Treaty Tribes shall provide any surveys or population assessments that they have performed on non-covered tidelands within 4 years of the Effective Date.

   3.1.2    Within sixty days after the Effective Date, the Tideland Parties who control non-covered tidelands shall respond to the inquiries and supply to the Treaty Tribes the documents described in List A, during which each non-covered tideland will be subject to a stay on harvesting. The stay shall be lifted upon receipt of a complete response to List A.  Notwithstanding other extensions of time authorized by this Section, or by a court order, in no event shall the stay provided in this section extend beyond sixty days.

   3.1.3    Extension by Agreement. The deadline for responding to List A may be extended upon mutual agreement of the Tideland Party and Treaty Tribe(s) in whose usual and accustomed fishing grounds the tideland is located.

   3.1.4    Support for Proposed Tribal Share.  In addition to the response to the inquiries and requests for production on List A, the Tideland Party is encouraged to provide any additional available documentation to support its position on the Proposed Tribal Share for the tideland as is requested in List A, Question 11 of this Agreement.  If the Treaty Tribes reasonably request additional documentation, the Tideland Party must provide any responsive documents in its possession within thirty (30) days.

   3.1.5    Failure to Respond.  The Tideland Party must respond to each List A question and request separately, fully, and in writing.  The Tideland Party has a duty to furnish all of the information and complete documents available to it at the time of the answer.  If only partial information or documents are currently within the control of the Tideland Party, the Tideland Party shall respond with the information and documents that it has available, indicate that it is still gathering responsive information, and supplement the response in a timely manner with the additional and complete information.  If after a good faith search, the Tideland Party lacks information or knowledge necessary to reply, the Tideland Party must state that it is unable to provide the information sought and disclose the specific steps it took in an effort to obtain the information.  An answer is complete when provided under these instructions.  If there is no response and no documents produced or the documents produced are substantially incomplete within the initial 60 days, then all shellfish on the parcel shall be deemed a natural bed and the Treaty Tribes' share set at 50%, or more if recoupment is allowed.  If the Treaty Tribe(s) in whose usual and accustomed fishing grounds the tideland is located fail to reply within ninety days of receipt to a Tideland Party's complete response, such Treaty Tribe(s) waive any claim that the submitted response is incomplete.

**3.2     Site visits, surveys and population assessments**

Following the response to List A, if a Treaty Tribe requires a site visit, survey and/or population assessment, it shall be conducted as follows:

3.2.1    Within 30 days of the Treaty Tribes receiving a complete response to List A, the Treaty Tribes and the Tideland Parties agree to schedule site visits, surveys and/or population assessments, if needed, and determine the party responsible for the site visits, surveys and population assessments.

For Tidelands in Southwest Puget Sound Waters.

West of a Line Drawn from Johnson Point to Devils Head.  Once the Tideland Party provides a complete response to List A to the Squaxin Island Tribe, the Tribe has until the dates listed in Exhibit B to conduct site visits, surveys and/or population assessments.

For All Other Non-Covered Tidelands.

If the Tideland Party provides a complete response to List A, the Parties shall have an additional 120 days to conduct a site visit, survey, and/or population assessment in order to help ascertain an estimation of the amount of naturally produced clams and/or oysters on the parcel available for Tribal harvest ("Proposed Tribal Share").  This 120-day period shall be limited to those months that hold daylight low tides (April through September).  Therefore, dependent on the Effective Date of this Agreement, the 120 days may not necessarily run consecutively.  This harvest estimation shall include quantitative results of a population survey and/or population assessment.  The methods of the survey and/or population assessment must be statistically defensible and meet or exceed the rigor of current methodologies used by the Treaty Tribes and the Washington State Department of Fish and Wildlife for estimating bivalve shellfish populations.  Either the Treaty Tribes or the Tideland Party, or both, may conduct the site visits, surveys, and/or population assessments, within the time frame agreed to by the Parties.  Once the survey and/or population assessment is complete for a parcel, if the Tideland Party is engaged in or intends to engage in artificial shellfish enhancement, the Tideland Party shall complete the notice required by Section 6.3 of the Revised Shellfish Implementation Plan ("Section 6.3 notice") (Dkt. No 14331) (the "Revised Shellfish Implementation Plan") and provide it to the Treaty Tribes.

3.2.2    If the Tideland Party contends there are no natural shellfish beds or if the Treaty Tribe disagrees with the Tideland Party's assertion as to the amount of the Tribal Harvest Share, the Treaty Tribes shall also have a 120-day time period as described in Section 3.2.1 to conduct their own site visit, survey and/or population assessment.

Applicable to All Non-Covered Tidelands:

3.2.3    All Parties retain the right to conduct site visits, surveys and population assessments.

3.2.4    Treaty Tribes shall give the Tideland Party at least fourteen (14) calendar days' notice prior to the proposed date of the site visit, survey and/or population assessment.  A Party or the State may accompany the other Party during site visits, surveys and population assessments.

3.2.5    If the Tideland Party fails to provide the information requested in Section 3.1.5 and/or to timely provide the additional requested documentation, the deadline for the Treaty Tribe to conduct site visits, surveys and/or population assessments for that tideland shall be extended by the amount of time that it takes to obtain the response to List A and/or additional documentation.

3.2.6    The period allowed to complete site visits, surveys and/or population assessments may be extended by written agreement of both Parties.

3.2.7    Except as provided in Section 3.1.2, and provided that the Tideland Party provides a Section 6.3 notice as required pursuant to Section 3.2.1, the Tideland Party shall be permitted to continue with any enhancement or cultivation activities at his or her own risk, pending the resolution of any dispute resolution proceeding associated with the issues identified in this Section; however, any harvests shall be documented and notice shall be provided to the Treaty Tribes if such harvests occur prior to the resolution of the dispute.

### 3.3    Harvest Plans

No later than thirty days after agreement between the Treaty Tribes and Tideland Party regarding the Proposed Tribal Share, the Parties shall enter into a Harvest Plan for each non-covered tideland in Exhibit A (see Exhibit C, Hood Canal/Strait of Juan de Fuca Uniform Harvest Plan) or a parcel specific harvest plan. For areas where Exhibit C is applicable, where appropriate, the Parties can mutually agree to a parcel specific harvest plan that differs from the plan provided in Exhibit C. However, if the Parties cannot agree to a different harvest plan within 30 days, they agree to adopt a substantially similar plan or proceed jointly to dispute resolution to resolve the issue.

### 3.4    Contingent Waiver of Past Harvest Claim (Recoupment Claim)

The Treaty Tribes shall be entitled to harvest recoupment of previous harvests by a Tideland Party of Tribal shares permitted pursuant to Section 2.5 of the Revised Shellfish Implementation Plan  if a Tideland Party (1) opts to dispute the existence of a natural bed or (2) makes a claim for a reduced Tribal share below 50% of the total amount of shellfish that should be available for harvest by the Parties in a manner not supported by substantial evidence (i.e. such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; while substantial evidence may consist of inferences, such inferences must be the product of logic and reasoning) and, the Tribe prevails on any such claims in dispute resolution.  In addition, a Tideland Party that fails to perform the terms, conditions, covenants and/or promises set forth in this Agreement or otherwise interferes with a Treaty Tribe's exercise of its Treaty right may be subject to recoupment, in addition to other relief.  Recoupment does not include the harvest of Tribal shares within the current harvest cycle if harvest reallocation is needed for the Treaty Tribes to obtain their harvest share from the current harvest cycle.  Any such reallocation will be addressed in the harvest plan.

### 3.5    Claims Based Upon Lack of Compliance with Section 6.3 of the Revised Shellfish Implementation Plan

Notwithstanding Section 5.3 of this Agreement, the Treaty Tribes may claim that a Tideland Party did not comply with the notice requirements of Section 6.3 of the Revised Shellfish Implementation Plan in the

following limited circumstances: (a) the Tideland Party asserts that there was no natural bed on the tideland prior to commencing enhancement/cultivation and a proxy survey indicates that similarly situated tidelands did have a minimum density of shellfish as provided in Section 3.6; (b) the Tideland Party interferes with the Treaty Tribes' ability to exercise their treaty rights; (c) the Tideland Party harvests after receiving notice of an intent by the Treaty Tribes to conduct a survey or population assessment on the parcel and does not keep adequate records of the harvest; and/or (d) in response to a claim or argument made by a Tideland Party based upon the Treaty Tribes' failure to claim a violation of the Revised Shellfish Implementation Plan due to lack of a Section 6.3 notice.  Absent the above limited circumstances, the Treaty Tribes waive any claim or defense associated with a Tideland Party's failure to provide a Section 6.3 form or notice pursuant to the requirements of the Revised Shellfish Implementation Plan during the pendency of the Dispute Resolution Proceeding.  Notwithstanding Sections 3.6 and 5.3, in the event that the Treaty Tribes claim that a Tideland Party did not comply with the notice requirements of Section 6.3 of the Revised Shellfish Implementation Plan, the Tideland Parties may argue as a defense that the Treaty Tribes failed to comply with the notice requirements stated in Section 6.1 of the Revised Shellfish Implementation Plan.

**3.6     Minimum Densities Agreement**

Nothing in this Agreement shall trigger the notice period set in Section 6.1 of the Revised Shellfish Implementation Plan. The minimum densities that apply to all non-covered tidelands listed in Exhibit A and those that become non-covered in the future (provided that they are included within Section 6 of the Revised Shellfish Implementation Plan) are those established in the Consent Decree and Settlement Agreement Re Manila Clams, Native Littleneck Clams and Pacific Oysters (Dkt. No. 18848) and in the Consent Decree and Settlement Agreement [re geoduck] (Dkt. No. 18847).

**3.7     Opt-Out Provision**

All non-covered parcels identified on Exhibit A are subject to the rights and limitations set forth in this Agreement, save those parcels for which an affirmative opt-out has been timely filed.  The opt-out terms are more fully described in Exhibit D.  The Parties agree to inform all members of the Puget Sound Shellfish Growers Legal Defense Fund of the "Notice of Proposed Settlement," to publish said Notice in the Pacific Coast Shellfish Growers Association ("PCSGA") newsletter, and to mail said Notice to all identified shellfish companies that may control non-covered parcels that are not already members of the Puget Sound Shellfish Growers Legal Defense Fund.  The "Notice of Proposed Settlement" is attached as Exhibit D.

**4.     <u>COVERED TIDELANDS</u>**

The following shall apply to all covered tidelands listed in Exhibit A. For all covered tidelands listed in Exhibit A, the Tideland Parties agree to provide their current lease on any property that is not currently owned by that Tideland Party.  All intervenor Tideland Parties agree to provide a lease including the term and parties (with financial information redacted as necessary) upon request within 30 days of that request.

**4.1     Process for New Motions for Intervention under 2.E.**

If a person has not previously intervened and seeks to intervene under the 2007 Shellfish Settlement Agreement pursuant to Section 2.E, the claim will be approved pursuant to stipulated motion, with no Tribal objection, if the person submits the following documents: (1) a valid aquatic farm registration for the tideland; (2) a valid Washington Department of Health certification for the tideland; (3) a deed, lease or contract that provides the right to harvest on the tideland; and (4) documentation that the person has acquired the right to harvest from a person who previously intervened in the dispute resolution proceeding, which can be established through either a lease assignment, agreement, or deed purchase from the previous intervenor.  As to (4), if the person did not acquire the right to harvest from a previous intervenor, then the person will need to establish that the person obtained a deed, lease or contract within 18 months of the termination date of deed, lease or contract held by the prior intervenor.

Certain circumstances may allow for an extension of the 18-month period.  These circumstances include but are not limited to environmental conditions that would prevent cultivation or harvesting; Department of Health closures; property disputes, probate, or other legal circumstances that cloud the property's title or prevent leasing or contracting for the tidelands; and/or market conditions that limit the ability of the owner to lease or contract for the tidelands.  Any such circumstances extending the 18-month period must be mutually agreed upon by the Parties prior to the termination of the 18-month period.  The Parties agree to discuss and attempt to resolve any such circumstances and/or extensions in good faith.  Tideland Parties who have already intervened prior to the Effective Date of this Agreement do not need to provide any notice pursuant to Section 2 of the 2007 Settlement Agreement.

If a person who has not previously intervened fails to intervene under the 2007 Shellfish Settlement Agreement pursuant to Section 2.E or his or her motion to intervene is denied by the court, the Treaty Tribes have the right to harvest shellfish from such tidelands where intervention was not granted for as long as such person controls the tidelands, pursuant to the terms of the Revised Shellfish Implementation Plan; however, such failure to intervene shall not affect the status of the tidelands as "covered tidelands," which is governed by Section 4.3 below.

**4.2     Interim Tribal Harvests**

In the event that a covered tideland is not leased or owned by a Tideland Party or other shellfish company that successfully intervenes pursuant to Section 4.1 for a period of 18 months, then the Treaty Tribes shall be entitled to harvest shellfish from such tidelands pursuant to the terms of the Revised Shellfish Implementation Plan for as long as such tideland is not leased or owned by a Tideland Party or other shellfish company that successfully intervenes pursuant to Section 4.1.  The 18-month period may be extended based upon the same circumstances described in Section 4.1.  The Treaty Tribes' right to harvest shellfish pursuant to this Section shall terminate immediately upon execution of a lease or purchase of the tidelands by a Tideland Party or other shellfish company that successfully intervenes pursuant to Section 4.1.  Regardless of any language to the contrary, no language in this Section is intended to affect the status of tidelands as "covered tidelands," which is governed by Section 4.3 below.

**4.3     Process for Covered Tidelands to Waive Coverage Protections**

The Puget Sound Shellfish Growers Legal Defense Fund shall provide a current list of all covered tidelands, including parcel number, the name of the Tideland Party that owns or leases the tidelands, and the lease, deed or contract authorizing the right to harvest and/or cultivate. This list shall be incorporated into this Agreement as Exhibit E.

Covered tidelands shall cease to be covered if those tidelands are sold, deeded or otherwise permanently transferred so that the tidelands are not owned or leased by a shellfish company for more than three years for clams or four years for oysters from the date of the sale or transfer.  Further, covered tidelands that are not used for the purposes of commercial shellfish cultivation for a period of eight or more years shall also cease to be covered.  The time periods described in this paragraph shall be collectively defined as the "Grace Period."

Certain circumstances may allow for an extension of the Grace Period.  These circumstances include but are not limited to environmental conditions that would prevent cultivation or harvesting; Department of Health closures; delays associated with obtaining local, state, or federal regulatory permits authorizing shellfish activities; fallowing with the intent of future commercial shellfish cultivation; property disputes, probate, or other legal circumstances that cloud the property's title or prevent leasing the tidelands; and/or market conditions that limit the ability of the owner to lease the tidelands.  Any such circumstances extending the Grace Period must be mutually agreed upon by the parties prior to the termination of the Grace Period.  The parties agree to discuss and attempt to resolve any such circumstances and/or extensions in good faith.

**4.4     Binding Effect**

The Parties and the State agree that a purpose of the 2007 Settlement Agreement was to provide a basis for commercial growers to seek "coverage" for tideland parcels that they own or control as growers engaged in shellfish culture.  Coverage under the 2007 Settlement Agreement is thus for the benefit of commercial growers who successfully intervene based upon the criteria and terms set forth in the 2007 Settlement Agreement, and that principle is carried forward in connection with the interpretation and application of this Agreement.  With respect to the covered tidelands identified in Exhibit A that are operated by Tideland Parties who have successfully intervened in *United States v. Washington*, C70-9213, Subproceeding 89-3 (Shellfish) as of the Effective Date (including Tideland Parties admitted pursuant to Section 5.3 hereof), Sections 4.1 and 4.2 of this Agreement contain covenants that amend and/or affect operation of the 2007 Settlement Agreement.  Each participating Tideland Party acknowledges and agrees these new provisions constitute a durable set of covenants and are intended to be binding on any successors to their interests as a grower arising from a transaction contemplated by Section 2E of the 2007 Settlement Agreement (as clarified by Section 4.1 hereof).  Accordingly, any future grower acquiring the interests of a Tideland Party participating in this Agreement, and who seeks to intervene in the future pursuant to Section 2E of the 2007 Settlement Agreement, shall be bound by this Agreement, including Sections 4.1 and 4.2.  These provisions do not apply to State-Owned tidelands identified in Section 4 of the 2007 Settlement Agreement.

5.   **GENERAL PROVISIONS APPLICABLE TO ENTIRE AGREEMENT**

**5.1    List of Tidelands Needed, Exhibit A**

Exhibit A hereto is a list agreed to by the Parties and State as showing the current status of all tidelands subject to this Agreement.

**5.2    Existing Harvest Plans**

This Agreement does not impact or otherwise affect any existing harvest plans for the parcels.

**5.3    Waiver of Objections and Appeals**

The Parties and State shall not file any objection with the United States District Court for the Western District of Washington or appeal to the Ninth Circuit Court of Appeals that challenges any of the orders issued in the Dispute Resolution Proceeding.  The Tribes also waive any objection to the Motions for Intervention and Motions to Substitute Party submitted in the Dispute Resolution Proceeding by Tideland Parties in August through November 2017 (Dkt. Nos. 355 – 373, 391, and 396).  Except as expressly provided in Sections 3.4 and 3.5, the Parties and State also hereby fully release and forever discharge each other from any and all claims, damages, demands, losses, liabilities, costs, and attorneys' fees associated with harvests on tidelands listed on Exhibit A that have occurred prior to the Effective Date.  The Treaty Tribes do not waive arguments related to the sufficiency of the documentation provided by the Tideland Parties submitted pursuant to Sections 3.1 and 3.2, except for the waiver associated with the notice requirements of Section 6.3 of the Revised Shellfish Implementation Plan described in Section 3.5 hereof. The Tideland Parties waive any claim or defense associated with the Treaty Tribes' failure to provide notice pursuant to the requirements of Section 6.1.1 of the Revised Shellfish Implementation Plan.  The Parties and State shall bear their own costs, attorneys' fees, and expenses associated with the Dispute Resolution Proceeding.

**5.4    Dispute Resolution**

5.4.1    In this Section, "Parties" shall include the State.

5.4.2    In the event that one or more Parties disagree over issues that arise under this Agreement and cannot informally reach resolution after good faith efforts, any such disagreement will be submitted for adjudication pursuant to the dispute resolution provisions stated in Section 9 of the Revised Shellfish Implementation Plan.

5.4.3    The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between principals who have authority to settle the controversy and who are at a higher level of management than the persons with direct responsibility for administration of this Agreement. Any Party may give the other Party written notice of any dispute not resolved in the normal course of business. Within 15 days after delivery of the notice, the receiving Party shall submit to the other a written response. The notice and response shall include with reasonable particularity (a) a statement of each Party's position and a summary of arguments supporting that position, and (b) the name and title of the principal who will represent that Party and of any other person who will accompany

the principal. Within 30 days after delivery of the notice, the principals of both Parties shall meet at a mutually acceptable time and place.

5.4.4   Unless otherwise agreed in writing by the negotiating Parties, the above-described negotiation shall end at the close of the first meeting of principals described above ("First Meeting"). Such closure shall not preclude continuing or later negotiations, if desired.

5.4.5   All offers, promises, conduct and statements, whether oral or written, made in the course of the negotiation by any of the Parties, their agents, employees, experts and attorneys are confidential, privileged and inadmissible for any purpose, including impeachment, in arbitration or other proceeding involving the Parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation.

5.4.6   At no time prior to the First Meeting shall either Party initiate dispute resolution under the Revised Shellfish Implementation Plan related to this Agreement except to pursue a provisional remedy that is authorized at law (such as injunctive relief) or by agreement of the Parties.  However, this limitation is inapplicable to a Party if the other Party refuses to comply with the requirements of Section 5.4 (including all subsections) above.

5.4.7   All applicable statutes of limitation and defenses based upon the passage of time shall be tolled while the procedures specified in Sections 5.4.3 and 5.4.4 above are pending and for 15 calendar days thereafter.  The Parties will take such action, if any, required to effectuate such tolling.

## 5.5   Controlling law

The 2007 Settlement Agreement, Revised Shellfish Implementation Plan, and other federal court orders shall control, except as expressly stated in this Agreement.  Nothing in this agreement relieves a party of its burden of proof under the Revised Shellfish Implementation Plan.

## 5.6   Tribal Contact

Unless otherwise directed, correspondence to the Treaty Tribes shall be directed to the contacts included in Exhibit F.  The contact list may be modified from time to time by providing written notice to the other Parties.

## 5.7   Entry and Jurisdiction

This Agreement shall be entered as an order in the United States District Court for the Western District of Washington and is exclusively enforceable in that Court under Section 9 of the Revised Shellfish Implementation Plan.  The Parties and State agree to reasonably defend this Agreement should any other party to the Dispute Resolution Proceeding seek to object or challenge such order.  Any amendment to address such objections must be mutually agreed upon by the Parties.

5.8      **Representations and Warranties**

Each Party and the State represents and warrants that the person who has signed this Agreement on behalf of such Party is authorized to execute and enter into this Agreement for and on behalf of such Party and State, and to bind such Party and State to the terms set forth herein.  Each Party and State further represents and warrants that no other or further consent, approval, or signature is required to authorize the undersigned to sign for and bind such Party and State.  All representations and warranties contained in this Agreement will survive the execution, delivery and effectiveness hereof.

5.9      **Disclaimers**

This Agreement is a product of a compromise for the mutual benefit of the Parties and State.  No Party or State admits any fault or liability with respect to the Dispute Resolution Proceeding claims, and this Agreement does not constitute, and will not in any circumstance be deemed to constitute, an admission of fault or liability by any Party or State.  The Parties and State acknowledge that the terms and conditions of this Agreement have resulted from the negotiations of the Parties and State and that no Party or State will be deemed to be the drafter or author of this Agreement.  The language in all or part of this Agreement will, in all cases, be construed as a whole according to its meaning and not strictly for or against any Party and State.  This document is not intended to impact current or future litigation regarding any Tribe's usual and accustomed fishing areas.

5.10     **Amendment**

This Agreement may be amended by an agreement in writing signed by all Parties and State, if the State's agreement is warranted.

5.11     **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.12     **Not Precedent**

This Agreement is based on the unique circumstances of the covered and non-covered tidelands.  This Agreement does not create precedent for any other parcels, or any other claim made by the Parties and State asserting or opposing coverage for any other parcels under the 2007 Settlement Agreement and shall not be used by any Party to this Agreement, or any other party in *United States v. Washington*, or their attorneys, to establish precedent in any proceeding concerning any other parcels.

5.13     **Tideland Party Notice Obligations**

The Tideland Parties shall provide a copy of this Agreement to any owners of covered tidelands and non-covered tidelands that they control for commercial shellfish purposes.

**5.14    Severability**

The provisions of this Agreement are severable.  If any provision of the Agreement is held invalid, that invalidity shall not affect the other provisions of the Agreement and the invalid provision shall be considered modified to conform to existing law and to the fundamental purpose of this Agreement and to this end, the provisions of this Agreement are declared to be severable.

**5.15    Headings**

The headings in this Agreement are for the convenience of the reader and are not intended to change its substance.

**5.16    Assignment**

Covenants and agreements contained in this Agreement shall be binding upon and shall inure to the benefit of the Parties and State hereto and their respective heirs, successors, lessees, licensees, and assigns.

**PUGET SOUND SHELLFISH GROWERS
LEGAL DEFENSE FUND**

_____          _____
Samuel W. Plauché, WSBA #25476             Robert M. Smith, WSBA # 47674
Plauché & Carr LLP                                        Partner
811 First Avenue, Suite 630                          K&L Gates LLP
Seattle, WA 98104                                         925 Fourth Avenue, Suite 2900
206.588.4188                                                Seattle, Washington 98104
billy@plauchecarr.com                                  Phone: (206) 370-5743
                                                                   Robert.Smith@klgates.com


Date: October __, 2020                                Date: October __, 2020



**RUSS' SHELLFISH COMPANY**


_____
Russel Norris
3110 SE Old Olympic Hwy
Shelton, WA 98584


Date: October __, 2020



Shellfish Settlement Agreement submitted May 21, 2020
Page 11 of 20

**5.14    Severability**

The provisions of this Agreement are severable.  If any provision of the Agreement is held invalid, that invalidity shall not affect the other provisions of the Agreement and the invalid provision shall be considered modified to conform to existing law and to the fundamental purpose of this Agreement and to this end, the provisions of this Agreement are declared to be severable.

**5.15    Headings**

The headings in this Agreement are for the convenience of the reader and are not intended to change its substance.

**5.16    Assignment**

Covenants and agreements contained in this Agreement shall be binding upon and shall inure to the benefit of the Parties and State hereto and their respective heirs, successors, lessees, licensees, and assigns.

**PUGET SOUND SHELLFISH GROWERS**
**LEGAL DEFENSE FUND**

Samuel W. Plauché, WSBA #25476
Plauché & Carr LLP
811 First Avenue, Suite 630
Seattle, WA 98104
206.588.4188
billy@plauchecarr.com

Date: May 13, 2020

**RUSS' SHELLFISH COMPANY**

Russel Norris
3110 SE Old Olympic Hwy
Shelton, WA 98584

Date: October ___, 2020

**STATE OF WASHINGTON**

Robert M. Smith, WSBA # 47674
Partner
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Phone: (206) 370-5743
Robert.Smith@klgates.com

Date: May 13, 2020

Shellfish Settlement Agreement submitted May 14. 2020
Page 11 of 21

**5.14    Severability**

The provisions of this Agreement are severable.  If any provision of the Agreement is held invalid, that invalidity shall not affect the other provisions of the Agreement and the invalid provision shall be considered modified to conform to existing law and to the fundamental purpose of this Agreement and to this end, the provisions of this Agreement are declared to be severable.

**5.15    Headings**

The headings in this Agreement are for the convenience of the reader and are not intended to change its substance.

**5.16    Assignment**

Covenants and agreements contained in this Agreement shall be binding upon and shall inure to the benefit of the Parties and State hereto and their respective heirs, successors, lessees, licensees, and assigns.

**PUGET SOUND SHELLFISH GROWERS**
**LEGAL DEFENSE FUND**

_____
Robert M. Smith, WSBA # 47674
Samuel W. Plauché, WSBA #25476
Plauché & Carr LLP
811 First Avenue, Suite 630
Seattle, WA 98104
206.588.4188
robert@plauchecarr.com

Date: October ___, 2019

**RUSS' SHELLFISH COMPANY**

_____
Russell Norris
3110 SE Old Olympic Hwy
Shelton, WA 98584

October 3, 2019
Page 11 of 21

**STATE OF WASHINGTON**

_____

Robert W. Ferguson
Attorney General
Attorney General's Office
P.O. Box 40100
Olympia, WA 40100
360.586.3276

Date: October ___, 2019

Joseph V. Panesko, WSBA # 25286
Michael S. Grossman, WSBA # 15293
Attorney General's Office
P.O. Box 40100
Olympia, WA 40100
360.586.3276

Date: October ___, 2019
March, 10, 2020

**JAMESTOWN S'KLALLAM TRIBE**

_____

W. Ron Allen, Tribal Chair
1033 Old Blyn Hwy
Sequim, WA 98282
360.683.1109

Lauren Rasmussen, WSBA # 33256
Law Offices of Lauren Rasmussen, PLLC
1904 Third Avenue, Suite 1030
Seattle, WA 98101
206.623.0900
lauren@rasmussen-law.com

Date: October ___, 2019

Date: October ___, 2019

**LOWER ELWHA SKALLAM TRIBE**

_____

Frances G. Charles, Tribal Chair
2851 Lower Elwha Road,
Port Angeles, WA 98363
360.452.8471

Stephen H. Suagee, WSBA # 26776
2851 Lower Elwha Road
Port Angeles, WA 98363
360.461.2989
Steve.saugee@elwha.org

Date: October ___, 2019

Date: October ___, 2019

**STATE OF WASHINGTON**

Robert W. Ferguson
Attorney General
Attorney General's Office
P.O. Box 40100
Olympia, WA 40100
360.586.3276

Date: October __, 2019

Joseph V. Panesko, WSBA # 25286
Michael S. Grossman, WSBA # 15293
Attorney General's Office
P.O. Box 40100
Olympia, WA 40100
360.586.3276

Date: October __, 2019

**JAMESTOWN S'KLALLAM TRIBE**

W. Ron Allen, Tribal Chair
1033 Old Blyn Hwy
Sequim, WA 98282
360.683.1109

Lauren Rasmussen, WSBA # 33256
Law Offices of Lauren Rasmussen, PLLC
1904 Third Avenue, Suite 1030
Seattle, WA 98101
206.623.0900
lauren@rasmussen-law.com

Date: October 29, 2019

Date: October Dec. 13, 2019

**LOWER ELWHA SKALLAM TRIBE**

Frances G. Charles, Tribal Chair
2851 Lower Elwha Road,
Port Angeles, WA 98363
360.452.8471

Stephen H. Suagee, WSBA # 26776
2851 Lower Elwha Road
Port Angeles, WA 98363
360.461.2989
Steve.saugee@elwha.org

Date: October __, 2019

Date: October __, 2019

October 3, 2019
Page 12 of 21

**STATE OF WASHINGTON**

---

Robert W. Ferguson
Attorney General
Attorney General's Office
P.O. Box 40100
Olympia, WA 40100
360.586.3276

Date: October ___, 2019

---

Joseph V. Panesko, WSBA # 25286
Michael S. Grossman, WSBA # 15293
Attorney General's Office
P.O. Box 40100
Olympia, WA 40100
360.586.3276

Date: October ___, 2019

**JAMESTOWN S'KLALLAM TRIBE**

---

W. Ron Allen, Tribal Chair
1033 Old Blyn Hwy
Sequim, WA 98282
360.683.1109

Date: October ___, 2019

---

Lauren Rasmussen, WSBA # 33256
Law Offices of Lauren Rasmussen, PLLC
1904 Third Avenue, Suite 1030
Seattle, WA 98101
206.623.0900
lauren@rasmussen-law.com

Date: October ___, 2019

**LOWER ELWHA SKALLAM TRIBE**

---

Frances G. Charles, Tribal Chair
2851 Lower Elwha Road,
Port Angeles, WA 98363
360.452.8471

Date: October 7, 2019

---

Stephen H. Suagee, WSBA # 26776
2851 Lower Elwha Road
Port Angeles, WA 98363
360.461.2989
Steve.saugee@elwha.org

Date: October 9, 2019

**LUMMI NATION**

_[signature]_

Jeremiah Julius, Tribal Chair
2615 Kwina Road
Bellingham, WA 98226
360.384.1489

Date: October __, 2019

_[signature]_

Mary Neil, WSBA # 34348
2665 Kwina Road, Bldg C & D
Bellingham, WA 98226
360.312.2164
maryn@lummi-nsn.gov

Date: October __, 2019

**NISQUALLY INDIAN TRIBE**

Ken Choke, Tribal Chair
4820 She-Nah-Num Drive

Jay J. Manning, WSBA # 13579
Meghan E. Gavin, WSBA # 50124
Cascadia law Group PLLC
606 Columbia Street NW Suite 212
Olympia, WA 98501
360.786.5057
360.785.1535 (facsimile)
jmanning@cascadialaw.com
mgavin@cascadialaw.com

Date: October __, 2019

Date: October __, 2019

**LUMMI NATION**

_____

Jeremiah Julius, Tribal Chair
2665 Kwina Road
Bellingham, WA 98226
360.384.1489

Cynthia Cartwright, WSBA #55756
2665 Kwina Road
Bellingham, WA 98226
360.312.2160
cynthiac@lummi-nsn.gov

Date: October __, 2019

Date: October __, 2019

**NISQUALLY INDIAN TRIBE**

_____

Ken Choke, Tribal Chair
4820 She-Nah-Num Drive

_____

Jay J. Manning, WSBA # 13579
Meghan E. Gavin, WSBA # 50124
Cascadia law Group PLLC
606 Columbia Street NW Suite 212
Olympia, WA 98501
360.786.5057
360.785.1535 (facsimile)
jmanning@cascadialaw.com
mgavin@cascadialaw.com

Date: October __, 2019

Date: October __, 2019

**LUMMI NATION**

_____        _____

Jeremiah Julius, Tribal Chair          Mary Neil, WSBA # 34348
2616 Kwina Road                        2665 Kwina Road, Bldg C & D
Bellingham, WA 98226                   Bellingham, WA 98226
360.384.1489                           360.312.2164
                                       maryn@lummi-nsn.gov

Date: October __, 2019                 Date: October __, 2019

**NISQUALLY INDIAN TRIBE**

_____        _____

Ken Choke, Tribal Chair                Jay J. Manning, WSBA # 13579
4820 She-Nah-Num Drive                 Meghan E. Gavin, WSBA # 50124
                                       Cascadia law Group PLLC
                                       606 Columbia Street NW Suite 212
                                       Olympia, WA 98501
                                       360.786.5057
                                       360.785.1535 (facsimile)
                                       jmanning@cascadialaw.com
                                       mgavin@cascadialaw.com

Date: ~~October~~ DECEMBER 11, 2019    Date: October __, 2019

**LUMMI NATION**

---

Jeremiah Julius, Tribal Chair
2616 Kwina Road
Bellingham, WA 98226
360.384.1489

---

Mary Neil, WSBA # 34348
2665 Kwina Road, Bldg C & D
Bellingham, WA 98226
360.312.2164
maryn@lummi-nsn.gov

Date: October ___, 2019

Date: October ___, 2019

**NISQUALLY INDIAN TRIBE**

---

Ken Choke, Tribal Chair
4820 She-Nah-Num Drive

---

Jay J. Manning, WSBA # 13579
Meghan E. Gavin, WSBA # 50124
Cascadia law Group PLLC
606 Columbia Street NW Suite 212
Olympia, WA 98501
360.786.5057
360.785.1535 (facsimile)
jmanning@cascadialaw.com
mgavin@cascadialaw.com

Date: ~~October~~ DECEMBER 11, 2019

Date: ~~October~~ December 16, 2019

October 3, 2019
Page 13 of 21

NOOKSACK INDIAN TRIBE

Roswell Cline, SR
_____
Roswell "Ross" Cline, Sr., Tribal Chair
4979 Mount Baker Highway Suite F
Deming, WA 98244-0063
360.592.5164


Date: October 23, 2019


PORT GAMBLE S'KLALLAM TRIBE


_____
Jeromy Sullivan, Tribal Chair
31912 Little Boston Rd NE
Kingston, WA 98346
360.297.2646


Date: October __, 2019


_____
Charles N. Hurt, Jr., WSBA # 46217
Office of Tribal Attorney
Nooksack Indian Tribe
5047 Mt. Baker Hwy., P.O. Box 63
Deming, WA 98244
360.592.4158 x 3356
churt@nooksack-nsn.gov


Date: October 23, 2019


_____
Lauren Rasmussen, WSBA # 33256
Law Offices of Lauren Rasmussen, PLLC
1904 Third Avenue, Suite 1030
Seattle, WA 98101
206.623.0900
lauren@rasmussen-law.com


Date: October __, 2019


October 3, 2019
Page 14 of 21

**NOOKSACK INDIAN TRIBE**

Roswell "Ross" Cline, Sr., Tribal Chair
4979 Mount Baker Highway Suite F
Deming, WA 98244-0063
360.592.5164

Charles N. Hurt, Jr., WSBA # 46217
Office of Tribal Attorney
Nooksack Indian Tribe
5047 Mt. Baker Hwy., P.O. Box 63
Deming, WA 98244
360.592.4158 x 3356
churt@nooksack-nsn.gov

Date: October __, 2019

Date: October __, 2019

**PORT GAMBLE S'KLALLAM TRIBE**

Jeromy Sullivan, Tribal Chair
31912 Little Boston Rd NE
Kingston, WA 98346
360.297.2646

Lauren Rasmussen, WSBA # 33256
Law Offices of Lauren Rasmussen, PLLC
1904 Third Avenue, Suite 1030
Seattle, WA 98101
206.623.0900
lauren@rasmussen-law.com

Date: October 29, 2019

Date: October 13, 2019

**PUYALLUP TRIBE OF INDIANS**

David Z. Bean, Tribal Chair
3009 East Portland Avenue
Tacoma, WA 98404
360.573.7835

Date: October __, 2019

Sam Stiltner, WSBA # 07765
Alec Wrolson WSBA # 54076
Puyallup Tribe of Indians
3009 East Portland Avenue
Tacoma, WA 98404
360.573.7876
sams@puyalluptribe.com
alec.wrolson@puyalluptribe.com

Date: October __, 2019

**SAUK SUIATTLE**

Benjamin Joseph, Tribal Chair
5318 Chief Brown Lane
Darrington, WA 98241
360.436.0131

Date: October __, 2019

Jack W. Fiander, WSBA # 13116
5808A Summitview Avenue #97
Yakima, WA 98908
509.961.0096 or 509. 969.4436
towtnuklaw@msn.com

Date: October __, 2019

**SKOKOMISH INDIAN TRIBE**

Charles "Guy" Miller, Tribal Chair
80 N Tribal Center Rd
Skokomish, Washington
360.490.6679

Date: October __, 2019

Earle D. Lees, WSBA # 30017
N. 80 Tribal Center Road
Skokomish Nation, WA 98584
360.877.2100
eless@skokomish.org

Date: October __, 2019

October 3, 2019
Page 15 of 21

**PUYALLUP TRIBE OF INDIANS**

David Z. Bean, Tribal Chair
3009 East Portland Avenue
Tacoma, WA 98404
360.573.7835

Sam Stiltner, WSBA # 07765
Alec Wrolson WSBA # 54076
Puyallup Tribe of Indians
3009 East Portland Avenue
Tacoma, WA 98404
360.573.7876
sams@puyallyptribe.com
alec.wrolson@puyalluptribe.com

Date: October ___, 2019

Date: October ___, 2019

**SAUK SUIATTLE**

Benjamin Joseph, Tribal Chair
5318 Chief Brown Lane
Darrington, WA 98241
360.436.0131

Jack W. Fiander, WSBA # 13116
5808A Summitview Avenue #97
Yakima, WA 98908
509.961.0096 or 509. 969.4436
towtnuklaw@msn.com

Date: October 4, 2019

Date: October 4, 2019

**SKOKOMISH INDIAN TRIBE**

Charles "Guy" Miller, Tribal Chair
80 N Tribal Center Rd
Skokomish, Washington
360.490.6679

Earle D. Lees, WSBA # 30017
N. 80 Tribal Center Road
Skokomish Nation, WA 98584
360.877.2100
eless@skokomish.org

Date: October ___, 2019

Date: October ___, 2019

October 3, 2019
Page 15 of 21

**PUYALLUP TRIBE OF INDIANS**

David Z. Bean, Tribal Chair
3009 East Portland Avenue
Tacoma, WA 98404
360.573.7835

Sam Stiltner, WSBA # 07765
Alec Wrolson WSBA # 54076
Puyallup Tribe of Indians
3009 East Portland Avenue
Tacoma, WA 98404
360.573.7876
sams@puyallyptribe.com
alec.wrolson@puyalluptribe.com

Date: October ___, 2019

Date: October ___, 2019

**SAUK SUIATTLE**

Benjamin Joseph, Tribal Chair
5318 Chief Brown Lane
Darrington, WA 98241
360.436.0131

Jack W. Fiander, WSBA # 13116
5808A Summitview Avenue #97
Yakima, WA 98908
509.961.0096 or 509. 969.4436
towtnuklaw@msn.com

Date: October ___, 2019

Date: October ___, 2019

**SKOKOMISH INDIAN TRIBE**

Charles "Guy" Miller, Tribal Chair
80 N Tribal Center Rd
Skokomish, Washington
360.490.6679

Earle D. Lees, WSBA # 30017
N. 80 Tribal Center Road
Skokomish Nation, WA 98584
360.877.2100
elees@skokomish.org

Date: ~~October ___, 2019~~ Jan 8, 2020

Date: ~~October ___, 2019~~ Jan. 7, 2020

October 3, 2019
Page 15 of 21

**STILLAGUAMISH TRIBE OF INDIANS**

_[signature]_

Shawn E. Yanity, Tribal Chair
3322 236th St NE
Arlington, WA 98223
360.652.7362

_[signature]_ Scott Mannakee

Scott Owen Mannakee, WSBA # 19454
Tribal Attorney
3322  236th Street NE
Arlington, WA 98223
360.572.3028
smannakee@stillaguamish.com

Date: ~~October~~ 14, 2019
     _nr_ NOVEMBER

Date: ~~October~~ 14 2019
     _nr_ NOVEMBER

**SQUAXIN ISLAND TRIBE**

_____

Arnold Cooper, Tribal Chair
10 SE Squaxin Lane
Shelton, WA 98584
360.426.9781

_____

Kevin Lyon, WSBA # 15076
Sharon Haensly, WSBA # 18158
3711 SE Old Olympic Highway
Shelton, WA 98584
360.432.1771
klyon@squaxin.us
shaensly@squaxin.us

Date: October __, 2019

Date: October __, 2019

**SUQUAMISH TRIBE**

_____

Leonard Forsman, Tribal Chair
18490 Suquamish Way
Suquamish, WA 98392
360.598.3311

_____

Rit Bellis, WSBA # 29226
PO Box 498
Suquamish, WA 98392
360.394.8490
rbellsi@suquamish.nsn.us

Date: October __, 2019

Date: October __, 2019

October 3, 2019
Page 16 of 21

**STILLAGUAMISH TRIBE OF INDIANS**

_____

Shawn E. Yanity**,** Tribal Chair
3322 236th St NE
Arlington, WA 98223
360.652.7362

_____

Scott Owen Mannakee, WSBA # 19454
Tribal Attorney
3322   236th Street NE
Arlington, WA 98223
360.572.3028
smannakee@stillaguamish.com

Date: October ___, 2019

Date: October ___, 2019

**SQUAXIN ISLAND TRIBE**

_____

Arnold Cooper, Tribal Chair
10 SE Squaxin Lane
Shelton, WA 98584
360.426.9781

_____

Kevin Lyon, WSBA # 15076
Sharon Haensly, WSBA # 18158
3711 SE Old Olympic Highway
Shelton, WA 98584
360.432.1771
klyon@squaxin.us
shaensly@squaxin.us

Date: October ___, 2019

Date: October ___, 2019

**SUQUAMISH TRIBE**

_____

Leonard Forsman, Tribal Chair
18490 Suquamish Way
Suquamish, WA 98392
360.598.3311

_____

Rit Bellis, WSBA # 29226
PO Box 498
Suquamish, WA 98392
360.394.8490
rbellsi@suquamish.nsn.us

Date: October ___, 2019

Date: October ___, 2019

October 3, 2019
Page 16 of 21

**STILLAGUAMISH TRIBE OF INDIANS**

Shawn E. Yanity, Tribal Chair
3322 236th St NE
Arlington, WA 98223
360.652.7362

Scott Owen Mannakee, WSBA # 19454
Tribal Attorney
3322  236th Street NE
Arlington, WA 98223
360.572.3028
smannakee@stillaguamish.com

Date: October ___, 2019

Date: October ___, 2019

**SQUAXIN ISLAND TRIBE**

Arnold Cooper, Tribal Chair
10 SE Squaxin Lane
Shelton, WA 98584
360.426.9781

Kevin Lyon, WSBA # 15076
Sharon Haensly, WSBA # 18158
3711 SE Old Olympic Highway
Shelton, WA 98584
360.432.1771
klyon@squaxin.us
shaensly@squaxin.us

Date: October ___, 2019

Date: October ___, 2019

**SUQUAMISH TRIBE**

Leonard Forsman, Tribal Chair
18490 Suquamish Way
Suquamish, WA 98392
360.598.3311

Rit Bellis, WSBA # 29226
PO Box 498
Suquamish, WA 98392
360.394.8490
rbellisi@suquamish.nsn.us

Date: ~~October~~ November 26 , 2019

Date: ~~October~~ November 26 , 2019

October 3, 2019
Page 16 of 21

**SWINOMISH INDIAN TRIBAL COMMUNITY**

_Brian Cladoosby_

Brian Cladoosby, Tribal Chair
11404 Moorage Way
LaConner, WA 98257
360.466.3163


Date: October 10, 2019

_Emily Haley_

Emily Hutchinson Haley, WSBA # 38284
11404 Moorage Way
LaConner, WA 98257
360.466.1134
ehutchinson@swinomish.nsn.us


Date: October 9, 2019


**TULALIP TRIBES**


Teri Gobin, Tribal Chair
6406 Marine Drive
Tulalip, WA 98271
360.716.4000


Date:  October ___, 2019

Mason D. Morisset, WSBA # 00273
Morisset, Schlosser, Jozwiak &
Somerville
Suite 218 Colman Building
811 First Avenue
Seattle, Washington 98104
206.386.5200
mmorisset@msaj.com


Date: October ___, 2019


**UPPER SKAGIT TRIBE**


Jennifer Washington, Tribal Chair
25944 Community Plaze Way
Sedro-Woolley, WA 98284
360.854.7000


Date: October ___, 2019

David S. Hawkins, WSBA # 35370
General Counsel
Upper Skagit Indian Tribe
25944 Community Plaza Way
Sedro-Wooley, WA 98284
360.854.7016
dhawkins@UPPERSKAGIT.com


Date: October ___, 2019

October 3, 2019
Page 17 of 21

**SWINOMISH INDIAN TRIBAL COMMUNITY**

Brian Cladoosby, Tribal Chair
11404 Moorage Way
LaConner, WA 98257
360.466.3163

Emily Hutchinson Haley, WSBA # 38284
11404 Moorage Way
LaConner, WA 98257
360.466.1134
ehutchinson@swinomish.nsn.us

Date: October ___, 2019

Date: October ___, 2019

**TULALIP TRIBES**

Teri Gobin, Tribal Chair
6406 Marine Drive
Tulalip, WA 98271
360.716.4000

Mason D. Morisset, WSBA # 00273
Morisset, Schlosser, Jozwiak &
Somerville
Suite 218 Colman Building
811 First Avenue
Seattle, Washington 98104
206.386.5200
m.morisset@msaj.com

Date: October ___, 2019

Date: December _4_, 2019

**UPPER SKAGIT TRIBE**

Jennifer Washington, Tribal Chair
25944 Community Plaze Way
Sedro-Woolley, WA 98284
360.854.7000

David S. Hawkins, WSBA # 35370
General Counsel
Upper Skagit Indian Tribe
25944 Community Plaza Way
Sedro-Wooley, WA 98284
360.854.7016
dhawkins@UPPERSKAGIT.com

Date: October ___, 2019

Date: October ___, 2019

October 3, 2019
Page 17 of 21

**SWINOMISH INDIAN TRIBAL COMMUNITY**

_____

Brian Cladoosby, Tribal Chair
11404 Moorage Way
LaConner, WA 98257
360.466.3163

_____

Emily Hutchinson Haley, WSBA # 38284
11404 Moorage Way
LaConner, WA 98257
360.466.1134
ehutchinson@swinomish.nsn.us

Date: October ___, 2019

Date: October ___, 2019

**TULALIP TRIBES**

_____

Teri Gobin, Tribal Chair
6406 Marine Drive
Tulalip, WA 98271
360.716.4000

_____

Mason D. Morisset, WSBA # 00273
Morisset, Schlosser, Jozwiak &
Somerville
Suite 218 Colman Building
811 First Avenue
Seattle, Washington 98104
206.386.5200
mmorisset@msaj.com

Date:  October ___, 2019

Date: October ___, 2019

**UPPER SKAGIT TRIBE**

_____

Jennifer Washington, Tribal Chair
25944 Community Plaze Way
Sedro-Woolley, WA 98284
360.854.7000

_____

David S. Hawkins, WSBA # 35370
General Counsel
Upper Skagit Indian Tribe
25944 Community Plaza Way
Sedro-Wooley, WA 98284
360.854.7016
dhawkins@UPPERSKAGIT.com

Date: October ___, 2019

Date: October ___, 2019

October 3, 2019
Page 17 of 21

EXHIBIT A
Covered and Non-Covered Tidelands

EXHIBIT B
South Puget Sound Survey Schedule

EXHIBIT C
Hood Canal Strait of Juan de Fuca Wildstock Harvest Plan and Cultivated Shellfish Harvest Plan

EXHIBIT D
Opt Out Exhibit

EXHIBIT E
Covered Tidelands List with Growers Information

EXHIBIT F
Tribal Contacts

**List A**

**Parcel No.: _____ [insert specific parcel number from Exhibit A]**

For each specific parcel identified above answer the following:

1. Produce the current contract, lease or deed authorizing the right to harvest and or cultivate shellfish on the tideland.

   Response:  Attached lease dated _____; attached deed dated _____; or attached contract dated _____.

2. Produce the current (or most recent) State of Washington Aquatic Farm Registration.

   Response:  Attached AFR dated _____.  Not Applicable: ____

3. Produce the current (or most recent) Department of Health Harvest Site Certification.

   Response:  Attached DOH Harvest Site Certificated dated _____; Not Applicable: _____.
   If not applicable, explain why.

4. Produce the current (or most recent) Emerging Commercial Fisheries License.

   Response:  Attached EDF License dated _____; Not Applicable _____.

5. Produce, at a minimum, the amount of shellfish stock planted on the tideland during the last three years for Manila clams and the last four years for Pacific oysters.

   Response:  Attached records: [list].

6. Produce, at a minimum, records that indicate the month and amount harvested for the previous (5) years.

   Response:  Attached records: [list].

7. Produce all prior shellfish population surveys or assessments.

   Response:  Survey(s) and assessments dated _____.  None: _____.

8. Indicate whether you believe that the parcel contains a density of mature marketable shellfish greater than or equal to the minimum densities described in Attachment 1.  Explain the basis for your contention.

   Response:

9.  Have you previously submitted a 6.3 Notice for this parcel?

    Response: ϒ No; ϒ Yes, attached 6.3 Notice dated _____.

10. Are you currently engaged in commercial wildstock harvesting?

    Response: ϒ No; ϒ Yes.  If yes, then:

    If commercial wildstock harvesting has been occurring within the previous five (5) years: (1) indicate the estimated natural densities of mature, marketable shellfish; and (2) submit records that indicate the month and amount harvested for the previous seven (7) years.

11. Are you a Grower currently engaged in artificial enhancement activities?

    Response: ϒ No; ϒ Yes.  If yes, then:

    (a) summarize the location of artificial enhancement, history of harvest and artificial enhancement, and species artificially enhanced;

    (b) if so, estimate the density and overall quantity of mature shellfish on the tideland at this time;

    (c) if so, estimate the density and overall quantity of mature shellfish on the tideland that you contend could be harvested on a sustainable basis absent your and any prior shellfish company's current and historic artificial enhancement activities; and

    (d) Do you plan to file a Section 6.3 notice consistent with Section 3 of the Settlement Agreement? Response: ϒ No; ϒ Yes; ϒ Unknown.  If unknown, please explain why it is unknown at this time.